IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAWN BAIO                            :        CIVIL ACTION
                                     :
        v.                           :
                                     :
ANDREW SAUL[1],                      :
Commissioner of Social Security      :        NO. 18-9687

O P I N I O N

JACOB P. HART                              DATE:   January 16, 2020
UNITED STATES MAGISTRATE JUDGE

        Dawn Baio brought this action under 42 USC §405(g) to obtain review of the decision of

the Commissioner of Social Security denying her claim for Supplemental Security Income

("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As

discussed below, Baio's Request for Review will be denied, and judgment granted in favor of the

Commissioner.

I.      Factual and Procedural Background

        Baio was born on February 20, 1971.  Record at 140.  She completed the tenth grade in

school and later obtained a GED.  Record at 31, 172.  She has no prior relevant work.  Record at

19.  On August 29, 2014, Baio filed an application for SSI.  Record at 144.  In her application,

she alleged disability since November 7, 2007, as a result of a back injury, PTSD, and

anemia/fibroid tumors.  Record at 144, 171.

        Baio's application was denied initially and upon reconsideration.  Record at 63, 76.  She

then requested a hearing de novo before an Administrative Law Judge ("ALJ").  Record at 88.  A

hearing took place on November 1, 2016.  Record at 25.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to
Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall
survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

On March 31, 2017, the ALJ issued a written decision denying benefits.  Record at 11.

The Appeals Council denied Baio's request for review, permitting the ALJ's decision to stand as

the final decision of the Commissioner.  Record at 1.

II.    Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402

U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753

F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as

adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d

775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart

from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied

the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

activity' for a statutory twelve-month period."  42 U.S.C. § 423(d)(1).  As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-

step process:

> (i)  At the first step, we consider your work activity if any.  If you are doing substantial
> gainful activity, we will find that you are not disabled.  (ii) At the second step, we
> consider the medical severity of your impairment(s).  If you do not have a severe
> medically determinable physical or mental impairment that meets the duration
> requirement in § 404.1509, or a combination of impairments that is severe and meets the
> duration requirement, we will find that you are not disabled.  (iii)  At the third step, we
> also consider the medical severity of your impairment(s).  If you have an impairment(s)
> that meets or equals one of our listings in appendix 1 of this subpart and meets the
> duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we
> consider our assessment of your residual functional capacity and your past relevant work.
> If you can still do your past relevant work, we will find that you are not disabled.  (v).  At
> the fifth and last step, we consider our assessment of your residual functional capacity

and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Baio's Request for Review

The ALJ determined that Baio suffered from the severe impairments of degenerative disc disease of the lumbar spine, internal derangement of the right shoulder, depression, post-traumatic stress disorder ("PTSD"), and obesity. Record at 13. He found that no impairment, and no combination of impairments, met or medically equaled a listed impairment. Record at 13-14.

The ALJ found that Baio retained the following residual functional capacity ("RFC"):

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR §416.967(b) except she can do occasional pushing and pulling with the right upper extremity. She can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds. She can frequently balance but occasionally stoop, kneel, crouch and crawl. She is limited to frequent reaching in all directions with the right upper extremity. She can understand, remember and carry out simple instructions. She is limited to 1 or 2 step tasks. Work must be performed in a work environment free of fast-paced production requirements; and involving few, if any, work place changes. She can have occasional interaction with supervisors, and coworkers but no interaction with the public for the purpose of performing her work related tasks.

Record at 15.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ decided that Baio could work in such representative occupations as inspector and hand packager; photocopy machine operator; and sealing and canceling machine operator. Record at 20. He decided, therefore, that she was not disabled. Id.

In her Request for Review, Baio argues that the combination of her impairments, considered together, should have led the ALJ to find her to meet or equal one of the listed impairments. She also maintains that the ALJ's RFC analysis was inadequately explained, and failed to take into account her (a) inability to reach with her right arm, (b) need for at least one extra 15-minute break during the workday, (c) need to be absent more than once per month, and (d) inability to tolerate supervision or contact with co-workers.

IV.    Discussion

A.    The Listed Impairments

At stage three of his decision, the ALJ considered whether Baio met the requirements of Listing 1.02, 1.04, 12.04 or 12.15, and decided that she did not. Record at 13-15. Baio argues that his consideration of these listed impairments was inadequate.

1.    The Physical Listings

As above, the ALJ found that Baio suffered from degenerative disc disease of the lumbar spine, internal derangement of the right shoulder, and obesity, but that no impairment or combination of impairments met or equaled a listed impairment. Record at 13-14. As to the listings pertaining to physical impairments, he wrote:

> Specifically, 1.02, Major Dysfunction of a Joint, is not met because the claimant retains the ability to perform fine and gross movements with her hands. 1.04, Disorders of the Spine, is not met because there is no evidence in the record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.

Record at 14.

Baio argues that the ALJ's analysis is inadequate because it fails to set forth a detailed basis for the conclusion that her three severe physical impairments did not equal a listing. She maintains that this violated the holding in Burnett v. Commissioner of Social Security, where the Court of Appeals for the Third Circuit decided that conclusory statements are inadequate to meet

4

an ALJ's obligation at stage three because they do not permit adequate judicial review.  220 F.3d 112, 119-120 (3d Cir. 2000).

The Court of Appeals for the Third Circuit, however, has indicated in non-precedential cases that an ALJ's statement that he has considered impairments in combination with one another can be credited, where no reason has been shown to disbelieve the ALJ.  Morrison ex rel Morrison v. Commissioner of Social Security, 268 F. App'x. 186, 189 (3d Cir. 2008).  The District of New Jersey has interpreted this to mean that "an ALJ fulfills her duty to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that she has done so, and there is no reason to not believe her."  Ollie v. Commissioner of Social Security, Civ. A. No. 13-3297, 2014 WL 1272180 at *6 (D.N.J Mar. 26, 2014) and see Gainey v. Astrue, Civ. A. No. 10-1912, 2011 WL 1560865 at *13 (D.N.J. Feb. 25, 2011).

Baio has made no argument as to how a lumbar spine impairment and a shoulder impairment would combine to equal a listing regarding the major dysfunction of a joint, or one pertaining to a spine disorder.  He has not, therefore, shown a reason to disbelieve the ALJ. Whether or not Baio's impairments otherwise combined to render her disabled was considered later, at the fifth stage of the sequential analysis, and does not concern the listed impairments.

As for Baio's obesity, the ALJ wrote:

Although there are no Listing Sections in Appendix 1 specific to the evaluation of obesity impairments, SSR 02-1p requires the consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity.  These considerations have been taken into account in reaching the conclusions throughout the steps of the sequential disability evaluation process, even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity.

Record at 14.

Baio complains that this is merely boilerplate.  However, it is well established in this Circuit that remand is unwarranted, even if an ALJ completely fails to mention obesity, if the claimant does not specify how her weight impaired her ability to work, particularly where the decision is otherwise well-supported by the medical evidence.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005); Orta v. Commissioner of Social Security, Civ. A. No. 15-6061, 2016 WL 6304437 at *4 (D.N.J. Oct. 25, 2016); Ollie v. Commissioner of Social Security, supra, at *6.

This remains the case, even after the Third Circuit's decision in Diaz v. Commissioner of Social Security, 577 F.3d 500 (3d Cir. 2009).  In Diaz, the Court of Appeals noted that, unlike in Rutherford, the claimant had specifically argued that her obesity impacted her job performance. In this case, as in Rutherford, Baio did not assert obesity as a basis for disability in her application, and did not discuss it at her hearing.  She has not made any specific argument here. Therefore, even if the ALJ's discussion of Baio's obesity were inadequate (which it does not appear to be), Baio would not be entitled to a remand on that basis because she has not even attempted to show that her obesity did, in fact, impair her ability to work.

2.     The Mental Impairments

Listing 12.04 addresses depressive disorders.  20 CFR Part 404, Subpart P, App. 1 at §12.04.  Listing 12.15 addresses trauma and stressor-related disorders.  Id. at §12.15.  Both listings require that a claimant meet the diagnosis-related criteria set forth in part A of the listing. A claimant must also show that she has either marked limitations in two or more, or extreme limitation in one of these areas:  the ability to understand, remember or apply information; the ability to interact with others; the ability to concentrate, persist or maintain pace; and the ability to adapt or manage oneself.  §§ 12.04B and 12.15B.

6

As an alternative to Part B, the claimant can show that her mental disorder has lasted for two years; requires treatment or a highly structured setting; and that she has "marginal adjustment," meaning that she has a minimal capacity to adapt to changes in her environment or to new demands.  §§ 12.04C and 12.15C.

Baio has been diagnosed with depression and post-traumatic stress disorder.  Record at 249.  It can be assumed, therefore, that she would meet the A criteria for the cited listings.  The ALJ found, however, that Baio had only mild limitations in her ability to understand, remember or apply information; moderate limitations in interacting with others; moderate limitations in concentration, persistence and pace; and mild limitations in the ability to manage herself.  Record at 14-15.  He also found that Baio's disorders did not result in marginal adjustment, or a minimal capacity to adapt to changes, so that the C criteria were not met.  Record at 15.

Baio argues that the ALJ's analysis of the B and C criteria were based on an inaccurate view of the record.  However, Baio's mental health treatment history is not extensive.  She has never had a psychiatric hospitalization or partial hospitalization, although she was reportedly hospitalized once, prior to the relevant period, due to an eating disorder.  Record at 306.  In September, 2015, she began outpatient treatment at Trinitas Hospital.  Record at 296.  Upon intake, she was reported to have had a "minimal" psychiatric history, and not to have taken psychiatric medications in the past.  Record at 288.  Baio was not seen frequently at Trinitas.  She testified that she went for treatment "usually every six weeks."  Record at 38.  The treatment notes show only one visit every few months for medication management.  Record at 284-312.

Upon intake at Trinitas, Baio reported a very difficult history of sexual abuse and assault, with two suicide attempts during her teen years. Record at 289, 306. As an adult, she was arrested once for assault, and once for welfare fraud. Record at 287. At one appointment in 2016, she was described as unkempt, and at another she was called poorly groomed and malodorous. Record at 298, 301. Upon intake, in October, 2105, Baio was said to have a flattened affect and an anxious mood. Record at 291.

However, at the same intake assessment, Baio was said to be fully oriented, and to have normal speech and thought processes, with average intellectual functioning, adequate concentration, and no memory impairment. Record at 291. Even on July 28, 2016, the day when Baio was poorly groomed and malodorous, she had a linear thought process, low impulsivity, a normal affect, and good eye contact, with no hallucinations. Record at 301. Similarly, on September 27, 2016, when she was "unkempt," she was still calm and cooperative, with good eye contact, regular speech, and a linear thought process, with a neutral affect. Record at 298. She had no hallucinations, and no delusions or paranoia were noted. Id.

On March 3, 2014, before Baio started treating at Trinitas, she was seen for a consultative examination by Vasudev Makhija, MD, a psychiatrist and neurologist. Record at 245. At that time, she stated she had never been in psychiatric treatment. Record at 247. She was described as having "rather pasty makeup and a pale look." Record at 248. According to Dr. Makhija, however, Baio had a normal posture and gait, and no involuntary movements. Id. Her speech was coherent, though non-spontaneous and very soft. Id. Her thoughts were goal-directed, and she had no hallucinations or delusions. Id. She was alert and fully oriented. Record at 248.

8

In testing, Baio was able to follow and comprehend Dr. Makhija's instructions.  Id.  She was not able to subtract serial sevens, but she could subtract serial threes and count down from twenty.  Id.  Her fund of knowledge was good.  Id.  She was also able to "abstract well on proverbs."  Id.

Baio told Dr. Makhija that she did not socialize, and did not like people.  Record at 248.  Her adult son, with whom she lived, did the grocery shopping.  Id.  However, Baio told Dr. Makhija that she did household chores such as housecleaning and dishwashing, and was able to read books, and engage on the computer with Facebook and play online games.  Record at 248-9.  Dr. Makhija diagnosed Baio with post-traumatic stress disorder and severe persistent depressive disorder with anxious distress.  Record at 249.  However, she said Baio was able to handle funds in her own best interest.  Id.

Baio's statements to Dr. Makhija about her daily activities were consistent with her representation on the Functional Report she filed as part of her application for benefits that she spent the day on the computer, reading, and doing household chores.  Record at 177.  There, she also wrote that she fed and bathed pets, with the help of her son.  Record at 178.  She wrote that she could prepare simple meals, and that she dusted and washed dishes, and could vacuum, although with difficulty.  Record at 178.  However, Baio was also consistent with her statements to Dr. Makhija in writing that she did not leave the home often, and did not go shopping.  Record at 180, 181.

Given Baio's repeated descriptions of herself as self-isolating, it could be argued that the evidence as a whole indicated that her limitations in interacting with others were more than moderate.  The ALJ supported his finding of moderate limitation with the observation that Baio was "able to spend time with family."  Record at 14.  However, this may have been an

9

exaggeration, in light of Baio's statement to her treatment provider at Trinitas that she was very stressed by having to move back in with her mother, and that "they get into verbal altercations, where the patient's mother will call the patient 'a whore, you're stupid, and fat.'"  Record at 306. Baio admitted to homicidal ideation toward her mother, although she denied having plans or intentions.  Record at 306.

Nevertheless, the ALJ was more accurate in writing that, in the medical notes, Baio appeared to have a good rapport with her providers, and was described as pleasant and cooperative.  Record at 14.  Even if her limitations were marked, therefore, they were not extreme.

Fault could also be found with the ALJ's conclusion that Baio had only mild limitations in the ability to manage herself.  The ALJ wrote:  "The claimant asserted that she has difficulties managing her mood.  That said, the claimant also stated that she is able to handle self-care and personal hygiene."  Record at 15.  In fact, she was found to be disheveled and malodorous on a few occasions; apparently, she was not always able to handle personal hygiene.  However, Baio was able to take care of most of her domestic needs (she moved in with her mother only for financial reasons), and to obtain and attend medical appointments.  Therefore, even if her limitations in this area were moderate, the evidence does not show that they were marked.

As noted above, Baio could not meet the B requirements of either Listing 12.04 or 12.15 without showing that she had two marked limitations, or one extreme limitation.  Therefore, even giving Baio the benefit of the doubt and assuming that she should have been found to have marked limitation in interacting with others, and moderate limitations in the ability to manage herself, that would not be enough to meet a listing.

As to the C criteria, Baio argues that she should be found to require an "ongoing highly structured setting" because she is reluctant to leave the house, and has never worked. However, there is no evidence that the reason Baio had no prior relevant work was mental illness. On the contrary, Baio wrote in her Disability Report that she stopped working in 2001 to take care of her ill husband, before he passed away. Record at 171. In a February 24, 2014, letter submitted to the New Jersey State Division of Disability Determination Services, Dr. Allen S. Glushakow wrote that Baio told him she had been a "homemaker" since 2003. Record at 241. Even after beginning mental health treatment, on October 27, 2015, Baio told a Trinitas social worker that the basis for her SSI application was "Degenerative Bone Disease." Record at 286.

As a whole, therefore, the record demonstrates mental illness, as acknowledged by the ALJ. However, Baio has not shown that she should have been found to meet one of the mental health listings.

B.    The RFC Assessment

1.    Baio's Ability to Reach With Her Right Arm

In his RFC assessment, the ALJ found that Baio was limited to frequent (as opposed to constant) reaching with her right arm. Record at 15. Based on this assessment, the vocational expert testified that she could work as an inspector and hand packager; photocopy machine operator; or sealing and canceling machine operator. Record at 44-45. Baio argues that this RFC finding was erroneous. She points out that Drs. Andrew Przbyla and James Paolino, agency reviewing physicians who examined her records, both found that she was limited in reaching in all directions with her right arm. Record at 58, 70.

The ALJ did not ignore the findings of Drs. Przbyla and Paolino. He wrote: "the limitation for occasional reaching with the right arm appears extreme in view of the most recent consultative examination and normal x-ray findings." Record at 18.

Indeed, when consulting examiner Betty Vekhnis, MD, saw Baio on January 9, 2017, she found that she had a full range of motion in her shoulders, with only mild end-range tenderness in the right shoulder. Record at 315. Bilateral shoulder x-rays showed no abnormalities. Id. Dr. Vekhnis indicated on a Medical Source Statement that Baio was limited only in lifting overhead, which she could do "occasionally." Record at 323. The ALJ noted this in his decision. Record at 17. He gave Dr. Vekhnis's report "great weight." Record at 18.[2] Substantial evidence therefore supported the reason given by the ALJ for rejecting a limitation to only occasional reaching.

2.    The Need for Breaks and Absences

At the hearing, Baio's lawyer elicited from the vocational expert testimony that a fifteen-minute break in addition to a morning, noon, and afternoon break, would preclude employment. Record at 46. Also, an absence of more than one day a month on an ongoing basis would be unacceptable. Record at 46-7.

Baio now argues that the ALJ erred in failing to include in his RFC assessment and in his hypothetical questions to the vocational expert her need for extra breaks and multiple absences per month. Yet there is no particular evidence which shows a need for these limitations. Baio simply argues that they are a "likely scenario" given the extent of her impairments. Brief at 26.

---

[2] It is possible that the ALJ should have included in his RFC assessment Dr. Vekhnis's limitation of Baio to only occasional reaching overhead with her right arm. As the Commissioner points out, however, this is an issue which Baio has not raised. In any event, if this was an error, it was only harmful if all of the jobs identified by the ALJ as suitable for Baio required more than occasional overhead reaching with both arms.

The ALJ, however, did not err by failing to consider a scenario which may or may not exist, particularly where no one argued before him that it might exist. Nor does the evidence of record point clearly towards the need for breaks and absences. Baio testified that she uses only non-prescription ibuprofen to address her back and shoulder pain. Record at 34. She testified that she was limited in her activities, but did not mention taking breaks or naps. Record at 33-42. When asked to describe Baio's daily activities in a third-party function report, Baio's mother said that she "tries to run household" despite her pain, read, used the computer, washed dishes and "tried to complete all she could do." Record at 185.

3.    <u>Contact with Supervisors and Co-Workers</u>

As discussed above, the ALJ found that Baio was moderately limited in her ability to interact with others. Record at 14. He accordingly specified in his RFC assessment that Baio needed work which did not require more than occasional interaction with supervisors and co-workers, and required no contact with the public. Record at 15. Baio argues, however, that the ALJ erred by failing to include a limitation to *no* contact with supervisors or co-workers which would presumably preclude all work, although that is not a question which was asked of the vocational expert.

As was also discussed above, there was a basis for finding the ALJ's statement that Baio was able to "spend time with her family" was exaggerated. Baio appeared to have a very strained relationship with her mother. Record at 306. She also stated at Trinitas that she did not get along with her uncle, or have any contact with her two half-brothers, although she had a good relationship with her children. Record at 288.

Further, Baio has described herself as unwilling to leave her home. In her functional report, she wrote: "When I need to leave my home, I become anxious." Record at 183. Her mother partly confirmed this in her third-party report, writing that Baio did not like to leave the house alone. Record at 188. Baio also testified that she became nervous if she was around a lot of people in public. Record at 38. As noted above, during her consultative examination, Baio told Dr. Makhija that she did not socialize, and did not like people. Record at 248. She said that she would not have come to see Dr. Makhija if she were not "forced by Social Security." Record at 247.

Nevertheless, as is also discussed above, the ALJ was accurate in noting that Baio interacted well with health care providers, who described her as pleasant and cooperative. See Record at 287, 298. Despite Baio's statement to Dr. Makhija, there is no evidence that she missed medical appointments because of self-isolation. Notably, Baio did not mention a fear of leaving her home or interacting with others during her mental health treatment at Trinitas. Although she said her social life was poor, she also said she was "trying to start dating again." Record at 286.

Thus, the evidence did not compel the ALJ to find that Baio was completely unable to interact with supervisors or co-workers. The restrictions imposed by the ALJ in his RFC assessment appear reasonably calculated to address Baio's limitations in interacting with others, since they eliminate the need to be around a lot of people, or to engage in socializing.

V.    <u>Conclusion</u>

In accordance with the above discussion, I conclude that the decision of the Appeals

Council must be affirmed, and judgment entered in favor of the Commissioner.


BY THE COURT:


/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE